### VINCENT CAMOVITO

*v.*

### JENNIE L. MATTHEWS et al.

[Submitted July 24th, 1913.   Decided July 24th, 1913.]

1. A restrictive covenant that all buildings and additions on the land conveyed erected by the grantee, his heirs and assigns should be set back on a line with other buildings on the same side of the street, should be construed as prospective and ambulatory in its operation and application, meaning that, whenever a building line should be created by erections of neighboring owners, the covenantor and his successors in title could accommodate themselves to that line.

2. A restrictive covenant provided that all buildings and additions which the grantee, his heirs and assigns should erect on the property should be set back on a line with the other buildings on the same side of the street.—*Held*, that the covenant was at least ambiguous, and would not be enforced in equity as against one desiring to construct a business building on the street line after the locality had changed from residential to commercial, and nearly all the buildings devoted to business were constructed on the street line.

On bill, answer, replication and proofs.

*Mr. Halsted H. Wainright* and *Mr. Frank S. Katzenbach, Jr.*, for the complainant.

*Mr. Wilfred H. Jayne, Jr.*, and *Mr. R. Ten Broeck Stout*, for the defendants.

BACKES, V. C.

This is a bill to enforce a restrictive covenant. In 1892 Murray D. Stout, conveyed a vacant lot fronting one hundred feet on the easterly side of Clifton avenue (corner of Fourth street), Lakewood, New Jersey, to Peter W. Fick. The deed contained this covenant:

"All buildings and additions thereto which the said party of the second part, his heirs and assigns shall erect or cause to be erected at any time now or hereafter will be set back on a line with the other buildings on the same side of the aforesaid avenue and street."

The covenant was not one of a community scheme. By divers mesne conveyances the complainant and Jennie L. Matthews, defendant, are each owners of fifty feet frontage of this land. The defendant's title was the first taken from the covenantor. At the time the covenant was made there were but two or three buildings on the east side of Clifton avenue. These set back from the street line approximately thirteen feet. Former owners erected buildings on the lands of the complainant and defendant in about the same range, which are now used as stores with dwellings overhead. Trade has pushed its way up along Clifton avenue, so that at the present time the locality of the de-

fendant's property is more commercial than residential, and nearly all of the buildings devoted to business are built out to the street line. In keeping with them the defendant is building and extending her store to the street line of Clifton avenue. The complainant, who evidently is not inclined to keep up with the progress of the neighborhood, seeks to restrain her by an enforcement of the covenant of their predecessor in title. As I view the covenant it is prospective and ambulatory in its operation and application. Its meaning is that wherever the building line should be created by erections of neighboring owners, to that line the covenantor and his successor in title could accommodate themselves. No other reasonable construction, it seems to me, can be given to the covenant. The contention of the complainant that the covenant relates to the line of the two buildings then (1892) on the east side of Clifton avenue (Palmer House and Brown's store) is not impressive.

There is, however, another consideration which precludes relief to the complainant. The covenant is at least vague and ambiguous. Courts of equity do not aid one man to restrict another in the uses to which he may put his property unless the right to such aid is clear, and in cases when the right of the complainant to relief by the enforcement of a restrictive covenant is doubtful "to doubt is to deny." *Fortesque* v. *Carroll, 76 N. J. Eq. (6 Buch.) 583; Howland* v. *Andrus, 81 N. J. Eq. (11 Buch.) 175.*

The bill will be dismissed, with costs.